## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Christian Van Kleeff, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since December 2023. I am currently assigned to the Boston Field Division.

2. I am a graduate of the ATF National Academy Special Agent Basic Training and the Federal Law Enforcement Training Center Criminal Investigator Training Program. Prior to my employment with ATF, I worked as a civil engineer in Massachusetts for approximately three years. I am a graduate of the University of Massachusetts Amherst, where I received a Bachelor of Science degree in Civil & Environmental Engineering.

3. During my time as an ATF Special Agent, I have participated in a number of investigations involving federal firearms violations. Based on my training, knowledge, and experience, I am familiar with the manner and means commonly utilized by persons engaged in unlawful firearms activity, to include the unlawful possession, receipt, sale, transfer, and trafficking of firearms.

## PURPOSE OF THIS AFFIDAVIT

4. This affidavit is being submitted in support of an application for a criminal complaint and arrest warrant for Mohamed KABBA (YOB 1999). There is probable cause to believe that KABBA has engaged in the business of dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A).

5. I submit this affidavit for the limited purpose of establishing probable cause for the requested criminal complaint. Accordingly, I have not included each and every fact known to me, and other law enforcement officers involved in this investigation. As a result of my

personal participation in the investigation, review of reports submitted by other law enforcement personnel, and my consultations with other law enforcement officers, I am familiar with this investigation.

### PROBABLE CAUSE

6. In or around September 2025, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating KABBA for his involvement in the illegal trafficking of firearms. Information obtained during this investigation revealed that some of the firearms were sourced from individuals geographically located outside of Massachusetts, including in New Hampshire and Georgia.

7. An ATF undercover agent (the "UC") began communicating with KABBA at the inception of this investigation. While utilizing an ATF UC, from on or about October 1, 2025 to present, ATF has made controlled purchases from KABBA, resulting in the acquisition of 8 firearms.

8. I have learned during the course of this investigation, after a federal licensing system query, that KABBA is not a licensed importer, licensed manufacturer, or licensed dealer of firearms. Further, a query of the Massachusetts Criminal History Records Bureau – Massachusetts License to Carry ("LTC") / Firearms Identification Card ("FID") records revealed that KABBA does not possess a MA LTC and/or FID.

9. In September 2025, the UC called KABBA, who was utilizing a phone number ending in 9141 (TARGET PHONE 1). That call was audio recorded. As reflected in the recording, KABBA asked the UC what types of firearms that they were looking for, and explained that he had two separate sources for firearms, including one from Georgia. The UC continued to communicate with KABBA utilizing TARGET PHONE 1 during the month of

September 2025.

## October 2025 Controlled Purchase #1

10. In September 2025, the UC communicated with KABBA on TARGET PHONE 1. That call was recorded. As reflected in the recording, KABBA and the UC discussed a firearm transaction.

11. In October 2025, the UC communicated with KABBA utilizing TARGET PHONE 1. That call was recorded. As reflected in the recording, KABBA and the UC once again discussed a transaction regarding a firearm that he would sell to the UC for $1,100.00. KABBA directed the UC to meet him at a location in Lowell, MA. The UC traveled to the area in an ATF undercover vehicle. The UC was outfitted with video- and audio-recording equipment and spoke with KABBA utilizing TARGET PHONE 1, informing KABBA they had arrived in the area.

12. As reflected in the recording of the October meeting, a short time after the UC arrived at the predetermined location, KABBA entered the front passenger seat of the ATF undercover vehicle. KABBA handed the UC a shoebox containing a Beretta, Model APX 9mm pistol and 11 rounds of ammunition. The UC handed KABBA $1,100.00 in government funds.

## October 2025 Controlled Purchase #2

13. Later in October 2025, the UC communicated with KABBA utilizing TARGET PHONE 1. Those conversations were recorded. As reflected in the recordings, the UC and KABBA discussed a firearm transaction regarding Smith & Wesson and Glock firearms.

14. Later the same date, KABBA informed the UC that he would have both firearms in his possession by the time they met. KABBA and the UC agreed upon the sale of both firearms for $2,600.00.

15. KABBA continued to communicate with the UC utilizing TARGET PHONE 1, and initially directed the UC to meet KABBA around a location in Lowell, MA. KABBA then directed the UC to meet KABBA at a different nearby location. The UC traveled to the area in an ATF undercover vehicle. The UC was outfitted with video- and audio-recording equipment. The following meeting and phone call with KABBA were recorded. As reflected in the recordings, when the UC arrived at the predetermined location they communicated with KABBA utilizing TARGET PHONE 1 to inform KABBA they had arrived in the area. KABBA entered the front passenger seat of the UC's vehicle holding a white bag and then removed a black Glock gun box from the bag and handed it to the UC. The black Glock gun box contained the Smith &Wesson M&P 40 caliber pistol and a Glock 22 40 caliber pistol. The UC handed KABBA $2,600.00 in government funds in exchange for both firearms. KABBA informed the UC that the box also contained 13 rounds of 40 caliber ammunition.

### October 2025 Controlled Purchase #3

16. In October 2025, the UC communicated with KABBA utilizing TARGET PHONE 1. That call was recorded. As reflected in the recording, KABBA and the UC arranged for the purchase of two Glock 27, .40 caliber firearms for $3,000.00.

17. KABBA instructed the UC to meet him near a location in Lowell, MA. The UC traveled to the area in an ATF undercover vehicle. The UC was outfitted with video- and audio-recording equipment. The following phone calls and meeting between the UC and KABBA were recorded. As reflected in the recordings, upon UC's arrival to the area, the UC contacted KABBA at TARGET PHONE 1, and KABBA instructed the UC to meet him at a new location. A short time later, the UC contacted KABBA to inform him of their arrival at the location.

18. KABBA entered the ATF undercover vehicle, carrying a brown Nike bag. Within the bag was a black plastic bag containing two Glock 27 .40 caliber firearms, both of which had obliterated serial numbers. The UC provided KABBA with $3,000.00 in government funds in exchange for the Glock 27 .40 caliber firearms.

### November 2025 Controlled Purchase #4

19. In November 2025, the UC communicated with KABBA utilizing TARGET PHONE 1. That call was recorded. As reflected in the recording, the purpose of the communication was to arrange the purchase of three firearms from KABBA for $3,150.00.

20. In November 2025, KABBA instructed the UC to meet him at a location in Lowell, MA. The UC traveled to the area in an ATF undercover vehicle. The UC was outfitted with video- and audio-recording equipment. The following phone calls and meeting between the UC and KABBA were recorded. As reflected in the recordings, upon the UC's arrival to the area, the UC contacted KABBA at TARGET PHONE 1 to say that they were arriving at the predetermined location.

21. KABBA entered the ATF undercover vehicle, carrying a black backpack. KABBA handed the UC the backpack, which contained a Glock 26 Gen 5 with 31 rounds of 9 mm ammunition, a SIG Sauer 380 Auto with 6 rounds of .380 ammunition, and a SIG Sauer P250-22 with 9 rounds of .22 caliber ammunition. The UC provided KABBA with $3,150.00 in government funds in exchange for the firearms.

22. I have spoken with an ATF Special Agent who is a certified interstate nexus expert and is trained to examine firearms to determine their origin and status as to travel in or affecting interstate and/or foreign commerce. The Special Agent examined each firearm purchased during the transactions described above and determined that all 8 of the firearms

acquired by the UC in this investigation did travel in or affect interstate commerce. Specifically, the Special Agent is aware that Glocks, SIG Sauer, Beretta firearms are manufactured outside of Massachusetts. Further, a trace of the Smith & Wesson firearm revealed that it had been purchased outside of Massachusetts.

## CONCLUSION

23. Based on the foregoing, I believe probable cause exists to conclude that from October 1, 2025, to present, KABBA, without being a federally licensed dealer, did knowingly and willfully engage in the business of dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A).

Accordingly, I respectfully request that the Court issue the requested criminal complaint.

_Christian Van Kleeff_
Christian Van Kleeff
Special Agent, ATF

SWORN to me telephonically in accordance with Fed. R. Crim. P. 4.1 on this date of November 19, 2025.

_____
HON. DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE

